**EDELSBERG LAW, P.A.**
Scott Edelsberg (SBN 330090)
scott@edelsberglaw.com
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Tel: 305-975-3320
Fax: 786-623-0915

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
jkaliel@kalielpllc.com
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783

**KALIELGOLD PLLC**
Sophia G. Gold (SBN 307971)
sgold@kalielgold.com
950 Gilman Street, Suite 200
Berkeley, CA 94710
Telephone: (202) 350-4783

*Counsel for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DELE HOPE,** individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**EARLY WARNING SERVICES, LLC D/B/A/ ZELLE,**<br><br>Defendant. | Case No.:<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dele Hope, individually, and on behalf of all others similarly situated, hereby brings this Class Action Complaint against Defendant Early Warning Services, LLC d/b/a/ Zelle ("Defendant" or "Zelle") and alleges as follows:

**INTRODUCTION**

1. This lawsuit is brought as a class action on behalf of Plaintiff and thousands of similarly situated Zelle money transfer users who have been the victim of fraud on the Zelle service; who incurred losses due to fraud that have not been reimbursed by their banks or credit unions; and who were deceived by the marketing representations of Zelle into using its service, despite the major risks associated therewith. In its rush to add users, Zelle markets the false promise of a safe, secure and seamless money transfer experience.

2. Zelle is a payment transfer service wholly owned and operated by seven of the largest banks in the U.S.

3. Zelle encourages bank accountholders to sign up for the service by marketing itself as a fast, safe and secure way for consumers to send money. This is false. In fact, there are huge, undisclosed security risks of using the service, including from fraudsters who regularly exploit the service.

4. Zelle's marketing representations never inform users that *consumers*—not Zelle or the banks through whom money is transferred—bear the full risk of these grave security and fraud threats.

5. Indeed, because of Zelle's extremely close relationship both with the seven U.S. Banks that own and operate it, and the hundreds of other banks that are members of its network, Zelle is fully aware that a) there is a major fraud problem on its platform; and b) the banks that are a part of the network almost never reimburse victims of Zelle fraud for their losses.

6. As a result, users like Plaintiff unwittingly sign up for the Zelle service and later end up with huge, unreimbursed fraud losses. Such users never would have signed up for Zelle in the first place if they had known the extreme risks of signing up for and using the service— including that the risks of fraud would not be covered by Zelle and its member banks.

7. These risks are known to Zelle and its member banks but is omitted from all of its marketing.

8. Had Plaintiff and the Class members known of the true operation and risks of the Zelle service, they would not have used the Zelle service.

9. Plaintiff and the Class members have been injured by signing up for and using the Zelle service. Plaintiff brings this action on behalf of himself, the putative Class, and the general public. Plaintiff seeks actual damages, punitive damages, restitution, and an injunction on behalf of the general public to prevent Zelle and member banks from continuing to engage in its illegal practices as described herein.

**PARTIES**

10. Plaintiff Dele Hope is a citizen and resident of Long Beach, California.

11. Defendant Early Warning Services, LLC is a Delaware corporation with its principal place of business in Scottsdale, Arizona.

**JURISDICTION AND VENUE**

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class is a citizen of a different State than Defendant. The number of members of the proposed Classes in aggregate exceeds 100 users. 28 U.S.C. § 1332(d)(5)(B).

13. This Court has personal jurisdiction over the Defendant because it regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant transacts business in this District and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

# FACTUAL ALLEGATIONS

### A.   Overview

15.   It is free to sign up with Zelle. During the quick sign-up process, which takes place from within the user's bank's app or website, a user provides basic information to Zelle.

16.   While Zelle provides a link to what it calls a "User Agreement" on its website, at no time during the sign-up process on the bank's website or app do users like Plaintiff agree to be bound by that document.

17.   Signing up allows the fast transfer of account funds to other Zelle users.

18.   Created in 2017 by the largest banks in the U.S. to enable instant digital money transfers, Zelle is the country's most widely used money transfer service. Last year, people sent $490 billion in immediate payment transfers through Zelle.

19.   The Zelle network is operated by Defendant Early Warning Services, LLC, a company created and owned by seven banks: Bank of America, Capital One, JPMorgan Chase, PNC, Truist, U.S. Bank and Wells Fargo.

20.   The Zelle service is very popular, but it also has a massive fraud problem—in no small part because of the immediacy with which money transfers are made on the service. If a fraudster removes money from a Zelle user's bank account, either directly or by fooling the Zelle user to transfer money, those funds are unrecoverable to the consumer.

21.   Nearly 18 million Americans were defrauded through scams involving person-to-person payment apps like Zelle in 2020 alone, according to Javelin Strategy & Research, an industry consultant.

22.   Organized crime is rampant on Zelle and other similar person-to-person transfer services.

23.   Zelle knows full well that they have a widespread fraud problem on their hands, but has failed to take steps to warns users of these risks—or protect users who fall prey to fraud. Worse, Zelle knows full well that its member banks are not reimbursing users for fraud losses, but has failed to take steps to warn users of this fact.

24. For example, a common scam involves a scammer impersonating a bank employee and requesting that the accountholder transfer money to a different bank account for testing purposes. Unsuspecting Zelle users, tricked into making a fraudulent transfer, in many cases send hundreds or thousands of dollars to fraudsters. Generally, such lost funds are never reimbursed by Zelle or its member banks.

25. In another very common scheme, a Zelle user's phone is stolen and Zelle transfers are made from the stolen phone to the fraudster.

26. In short, and unbeknownst to average Zelle users, the Zelle network has become a preferred tool for fraudsters like romance scammers, cryptocurrency con artists and those who use social media sites to advertise fake concert tickets and purebred puppies. Generally, such lost funds are never reimbursed by Zelle or its member banks.

**B.     Zelle Falsely Markets Itself as Safe and Secure Way to Transfer Money and Fails to Warn About the Extreme Risks of Signing Up for and Using the Service**

27. In its marketing and during the signup process, Zelle makes repeated promises that it is a "fast, safe and easy way to send and receive money."

28. It also promises: "Move money in the moment. It's simple and secure – with lots of people you know."

29. It also promises:

> **Your money travels safely** from the minute you hit send to the minute it hits their account. Straight from you to them. So you get peace of mind and so does your nanny, your neighbor, and your friend Ned who sold you his old TV.

(emphasis added).

30. It goes on to promise that:

> The Zelle® app uses authentication and monitoring features to make your payments more secure. So whether you're using the Zelle® app or using Zelle® through your bank or credit union's mobile app or online banking, you'll have peace of mind.

31. But for the reasons described herein, use of the service is not "safe" or "secure."

32. At no time in its marketing or during the sign-up process does Zelle warn potential users of the true security risks and fraud loss risks of using its service.

33. Zelle's services can cause unsuspecting consumers like Plaintiff to incur massive losses on their linked bank accounts.

34. Zelle misrepresents (and omits facts about) the true nature, benefits, and risks of its service, functioning of which means that users are at extreme and undisclosed risk of fraud when using Zelle. Had Plaintiff been adequately informed of these risks, he would not have used Zelle.

35. Zelle's marketing materials—including within the app, in app stores, and on Zelle's website—never disclose these risks and material facts, instead luring consumers to sign up for and use the service with promises of ease and safety.

36. Zelle's representations—which all users view during the sign-up process—are false and contain material omissions.

37. Zelle misrepresents the true nature, benefits, and risks of the service, which targets users with an extreme and undisclosed risk of Zelle causing losses due to fraud. Plaintiff would not have used Zelle if he had been adequately informed of the risks.

C. **Plaintiff's Experience**

38. When Plaintiff signed up for Zelle he was not informed that Zelle's service had a significant "catch" and that significant monetary losses could result from signing up for the service—or that those losses almost never are reimbursed by users' banks or credit unions.

39. For example, on November 25, 2020, a fraudster transferred $395 from Plaintiff's bank account using the Zelle service.

40. At the start of the Covid-19 pandemic, Mr. Hope was unemployed and searching for opportunities to earn an income.

41. During his search, Plaintiff came across an online advertisement from a company purporting to offer investment trading through the foreign exchange market. Also known as "Forex" or "FX," it is the largest financial market in the world.

42. In order to access and begin trading through Forex, the company required Plaintiff to pay a "signup fee" of $500, but Plaintiff was told that if he signed up immediately, he would receive a discounted rate of $395. As requested, Plaintiff proceeded to transfer $395 via Zelle.

43. Soon after, the company ceased communicating with Plaintiff and he was not granted access to Forex as promised. Plaintiff tried contacting the company, but he never received a response. At this point, Plaintiff realized he fell victim to fraud.

44. Plaintiff timely informed his bank of the fraud, but his bank refused to reimburse him for the losses.

## CLASS ALLEGATIONS

45. Pursuant to Rule 23, Plaintiff brings this action individually and as representatives of all those similarly situated, on behalf of the below-defined Classes:

> All persons who signed up for the Zelle Service and incurred unreimbursed losses due to fraud (the "Class").
>
> All California persons who signed up for the Zelle Service and incurred unreimbursed losses due to fraud (the "California Subclass").

46. Excluded from the Classes are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staffs.

47. This case is appropriate for class treatment because Plaintiff can prove the elements of their claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

48. **Numerosity:** The members of the Class are so numerous that joinder of all members would be unfeasible and impracticable. The precise membership of the Class is unknown to Plaintiff at this time; however, it is estimated that the Class number is greater than one hundred individuals. The identity of such membership is readily ascertainable via inspection of Defendant's books and records or other approved methods. Class members may be notified of the pendency of this action by mail, email, internet postings, and/or publication.

49. **Common Questions of Law or Fact:** There are common questions of law and fact as to Plaintiff and all other similarly situated persons, which predominate over questions affecting only individual Class members, including, without limitation:

   a) Whether Zelle's representations and omissions about its service are false, misleading, deceptive, or likely to deceive;
   b) Whether Zelle failed to disclose the fraud risks of using its service;
   c) Whether Plaintiff and the Class members were damaged by Zelle's conduct;
   d) Whether Zelle's actions or inactions violated the consumer protection statute invoked herein; and
   e) Whether Plaintiff is entitled to a preliminary and permanent injunction enjoining Defendant's conduct.

50. **Predominance of Common Questions:** Common questions of law and fact predominate over questions that affect only individual members of the Class. The common questions of law set forth above are numerous and substantial and stem from Zelle's uniform practices applicable to each individual Class member. As such, these common questions

predominate over individual questions concerning each Class member's showing as to his or her eligibility for recovery or as to the amount of his or her damages.

51. **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, Plaintiff and all Class members were similarly injured through Zelle's uniform misconduct as alleged above. As alleged herein, Plaintiff, like the members of the Class, were deprived of monies that rightfully belonged to them. Further, there are no defenses available to Zelle that are unique to Plaintiff.

52. **Adequacy of Representation:** Plaintiff is an adequate class representative because they are fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Class, and because their interests do not conflict with the interests of the other Class members they seek to represent. Moreover, Plaintiff's attorneys are ready, willing, and able to fully and adequately represent Plaintiff and the members of the Class. Plaintiff's attorneys are experienced in complex class action litigation, and they will prosecute this action vigorously.

53. **Superiority:** The nature of this action and the claims available to Plaintiff and members of the Class make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein. If each Class member were required to file an individual lawsuit, Zelle would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Plaintiff with its vastly superior financial and legal resources. Moreover, the prosecution of separate actions by individual Class members, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual Class members against Zelle, and which would establish potentially incompatible standards of conduct for Zelle and/or legal determinations with respect to individual Class members which would, as a practical matter, be dispositive of the interests of the other Class members not parties to adjudications or which would substantially impair or impede the ability of the Class members to protect their interests. Further,

the claims of the individual members of the Class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto.

# FIRST CAUSE OF ACTION
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On behalf of Plaintiff and the Classes)**

54. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

55. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

56. Defendant's deceptive conduct related to material omissions and/or material misrepresentations that it provides safe and secure electronic money transfers through its Zelle service violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

57. The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

58. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

59. Defendant's practices as described herein are (a) immoral, unethical, oppressive, and/or unscrupulous and violate established public policy as recognized by, inter alia, causing injury to consumers which outweigh any purported benefits or utility.

60. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

61. Defendant's practices, as described herein, constitute "fraudulent" business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers, who expect safe and secure money transfers using the Zelle service. Moreover, Defendant concealed the security risks of using the Zelle service, including the risk of

fraud and the risk that fraudulent losses will never be reimbursed by Zelle or its member banks, is a practice that is likely to deceive a consumer acting reasonably under the circumstances, to the consumer's detriment.

62. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

63. Among other statutes, laws, and/or regulations, Defendant's acts and practices violate the following statutes, laws, and/or regulations:

   a) Violating Cal. Civ. Code § 1750, *et seq.*;
   b) Engaging in conduct in which the gravity of harm to Plaintiff and the Class outweighs the utility of the Defendant's conduct;
   c) Engaging in acts and/or practices and/or omissions that are immoral, unethical, oppressive, and/or unscrupulous and causes injury to consumers which outweigh its benefits; and/or
   d) Defendant committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly misrepresenting in its marketing materials the true risks and operation of its service.

64. Defendant's acts and practices offend an established public policy of secure electronic money transfers in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

65. The harm to Plaintiff and the Classes outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

66. Defendant's business practices have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

67. Plaintiff relied on Defendant's misrepresentations.

68. Had Plaintiff known the true risks of using Defendant's Zelle service, he never would have signed up for and used the Zelle service.

69. As a direct and proximate result of Defendant's unfair, fraudulent, and/or unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class members that they will be deceived into making money transfers with the Zelle service.

70. As a result of its unfair, fraudulent, and unlawful conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

**SECOND CAUSE OF ACTION**
**Violation of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code § 17500, *et seq*.**
**(On behalf of Plaintiff and the Classes)**

71. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

72. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with intent … to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

73. Defendant's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

74. Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

75. Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Classes, on behalf of the general public, seeks an order of this Court enjoining

Defendant from continuing to engage, use, or employ their practice of misrepresenting its Zelle service.

76. Further, Plaintiff and the members of the Classes, seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

77. Additionally, Plaintiff and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A. Certifying the proposed Classes, appointing Plaintiff as representative of the Classes, and appointing counsel for Plaintiff as lead counsel for the respective Classes;

B. Declaring that Zelle's policies and practices as described herein constitute a violation of California's Unfair Competition Law and/or violation of California's False Advertising Law;

C. Enjoining Defendant from the wrongful conduct as described herein;

D. Awarding restitution of all fees at issue paid to Defendant by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E. Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

F. Awarding actual and/or compensatory damages in an amount according to proof;

G. Punitive and exemplary damages;

H. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

I. Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

1      J.    Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: July 7, 2022                      Respectfully submitted,

**EDELSBERG LAW, P.A.**

By: */s/ Scott Edelsberg*
Scott Edelsberg
scott@edelsberglaw.com
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Tel: 305-975-3320
Fax: 786-623-0915

**KALIELGOLD PLLC**
Jeffrey D. Kaliel
jkaliel@kalielpllc.com
Sophia G. Gold
sgold@kalielgold.com
950 Gilman Street, Suite 200
Berkeley, CA 94710
Telephone: (202) 350-4783

*Counsel for Plaintiff and the Putative Class*